STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

DANIEL N. KASSABIAN (CABN 215249)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone:   (415) 436-7034
    Facsimile:   (415) 436-7234
    daniel.kassabian@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>KELVIN VELASQUEZ,<br><br>    Defendant. | CASE NO. CR 22-00363-MMC<br><br>MEMORANDUM IN SUPPORT OF<br>UNITED STATES' MOTION FOR DETENTION<br><br>Date:    October 24, 2022<br>Time:    10:30 am<br>Ctrm:    14, 18th Fl<br>Judge:    The Honorable Thomas S. Hixon |

## I.    SYNOPSIS

On September 20, 2022, the grand jury indicted defendant Kelvin Velasquez on five counts for

fentanyl and methamphetamine sales on June 8, June 29, and July 13, 2022. These were all

hand-to-hand sales at Mission and 7th Streets, across from the San Francisco Federal Building. During

the last sale, he had a co-conspirator deliver the fentanyl and methamphetamine while he was in Utah.

He was arrested at the same street corner where he had sold drugs, the day after he returned from Utah.

The government now moves for pretrial detention. Velasquez cannot overcome the presumption

in this case that no condition, or combination of conditions, exists that will reasonably assure his

appearance in court, and the community's safety.

Velasquez is a risk of non-appearance. Pretrial Services recommends detention on this basis. At

the time of his arrest, Velasquez also had an outstanding warrant for failing to appear, having absconded from proceedings in his pending drug case in San Francisco Superior Court.  He is an undocumented alien (a Honduran citizen) with a warrant of removal outstanding as noted by Pretrial Services. Velasquez has no family here, save two cousins locally whom he would not identify beyond their names. He has no permanent residence in the area; he claims to have lived in Utah for the past four months, but the timing of his drug dealing in San Francisco belie that assertion.  He has no surety.  He did not provide Pretrial Services anything by which it could verify the little information he did provide.

Velasquez also is an extreme danger to the community.  Velasquez sold over 75 grams gross— over 2½ ounces—of fentanyl, two milligrams of which is potentially lethal.[1]  The recent sales are not isolated events.  Rather, the facts leading up to five prior arrests on December 29, 2020, January 22, 2021, February 18, 2021, August 3, 2021, and April 20, 2022 show that Velasquez has been selling drugs in San Francisco undeterred by prior arrests, state charges, or court stay away orders.

## II.     LEGAL STANDARDS

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence.  *Id*.  A finding that a defendant is a danger to the community must be supported by clear and convincing evidence.  18 U.S.C. § 3142(f)(2)(B).  "[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)."  *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Categorical grants or denials of bail, not tethered to an individualized determination, are impermissible. *Id*.  Consideration of factors outside those articulated in section 3142 is also disfavored.  *Id*.

Where there is probable cause that a defendant has violated the Controlled Substances Act and faces a maximum of 10 years in prison or more, there is a rebuttable presumption that no condition or

---

[1]     U.S. Drug Enforcement Administration (DEA), Facts About Fentanyl (Feb. 23, 2022) *available at* https://www.dea.gov/resources/facts-about-fentanyl.

combination of conditions reasonably will assure the defendant's appearance as required and the safety of the community.  *See* 18 U.S.C. § 3142(e)(3)(A).  The initial burden of production to overcome the presumption is on the defendant.  *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).  While the presumption is rebuttable, it is not a "bursting bubble." *United States v. Jessup*, 757 F.2d 378, 382-83 (1st Cir. 1985) (Breyer, J.) *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990).  The presumption is not so weak that, if a defendant introduces evidence, "the presumption 'bursts' and totally disappears, allowing the judge (or jury) to decide the question without reference to the presumption." *Id*. (stating that "a 'bursting bubble' approach might render the presumption virtually meaningless" because a defendant can "always provide the magistrate with some reason").  Thus, the presumption is never erased; instead, it remains as an evidentiary finding militating against release that is to be weighted along with other relevant factors.  *U.S. v. King*, 849 F.2d 485 (11th Cir. 1988); *United States v. Ward*, 63 F. Supp. 2d 1203, 1209 (C.D. Cal. 1999) (citing *Jessup*, 757 F.2d at 389).

If the defendant has rebutted the presumption, the court must then consider four factors to determine whether to detain pretrial:  (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community by the defendant's release.  18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## II.    OFFENSE CONDUCT

The charges result from three controlled buy-walk purchases of fentanyl and methamphetamine by undercover (UC) officers of the San Francisco Police Department (SFPD) described below.

### A.    June 8, 2022 Controlled Buy-Walk Of Fentanyl

On June 8, 2022 at 12:40 pm, Velasquez sold 2.9 grams gross weight of suspected fentanyl, which tested presumptive positive for fentanyl,[2] for $50.  UC-1 waited for Velasquez to complete

---

[2]    All drugs have been submitted to the DEA lab to determine net weigh and purity.

1   another narcotics transaction, then contacted him.  After a brief interaction, UC-1 negotiated purchasing

2   $50 worth of fentanyl from Velasquez, provided two $20 bills and two $5 bills, and in return received

3   loose pieces of suspected fentanyl from Velasquez.  Velasquez then provided UC-1 with his phone

4   number and identified himself as "Kelvin."

5   **B.      June 29, 2022 Controlled Buy-Walk Of Fentanyl And Methamphetamine**

6          On June 29, 2022, Velasquez sold 7.6 grams gross weight of suspected fentanyl, which tested

7   presumptive positive for fentanyl, for $100; he also sold 7.2 grams net weight of suspected

8   methamphetamine, which tested presumptive positive for methamphetamine, for $100.

9          The evening of June 28 and the morning of June 29, UC-1 texted Velasquez at the phone number

10   Velasquez had provided on June 8.  The UC texted asking for $100.00 worth of "yellow" (fentanyl) and

11   $100.00 worth of "crystal" (methamphetamine), the latter for his friend, and Velasquez texted back "ok"

12   and told the UC to call him upon arrival.  On June 29, at 1:45 pm, two UCs contacted Velasquez at the

13   southwest corner of Mission and 7th Streets.  UC-1 said he needed "100 of yellow."  UC-2 told

14   Velasquez in Spanish that he wanted to start with $100 of "crystal."  The two UCs walked with

15   Velasquez down the south sidewalk of Mission Street, across from the San Francisco Federal Building.

16   Then Velasquez pulled out a plastic bag, bent down and began weighing a white, chalky substance on a

17   small digital scale he had on him.  He then handed UC-1 loose, suspected fentanyl, and UC-1 handed

18   Velasquez five $20 bills.  Then, while still bent down, Velasquez took multiple rocks of suspected

19   methamphetamine out of his bag, placed them on the scale, and then handed them to UC-1, who then

20   gave Velasquez five $20 bills.  UC-2 then asked Velasquez for his phone number, which Velasquez

21   provided, and UC-2 told Velasquez that UC-2 would contact him next week to purchase additional

22   narcotics.  Velasquez and UC-2 shook hands, and the two UCs walked away.

23   **C.      July 13, 2022 Controlled Buy-Walk Of Fentanyl And Methamphetamine**

24          On July 13, 2022, Velasquez sold 67.5 grams gross weight (approx. 2 oz.) of suspected fentanyl,

25   which tested clear for mannitol,[3] for $800; he also sold 58.7 grams gross weight (approx. 2 oz.) of

---

26

27   [3]   Mannitol is a cutting agent for fentanyl, and on occasion fentanyl is not identified by the presumptive test of a spot of the seized substance that includes mannitol.  In any event, Velasquez is charged with conspiracy for this incident, so the charge would survive even in the unlikely event Velasquez did not sell actual fentanyl on July 13.

28

suspected methamphetamine, which tested presumptive positive for methamphetamine, for $800.

Starting on July 12, an SFPD officer texted Velasquez using UC-2's phone and negotiated with Velasquez to purchase two ounces of fentanyl and two ounces of methamphetamine for $1600 the next day ($600/oz fentanyl, $200/oz methamphetamine).  Then on July 13, UC-2 called Velasquez's phone and Velasquez said that they could meet at Mission and 7th Streets in 30 minutes.  UC-2 called Velasquez again 30 minutes later, and Velasquez told UC-2 that he could not make it to San Francisco to complete the purchase.  Instead, Velasquez's brother, "Juan," would meet and provide UC-2 with the narcotics.  UC-2 agreed by telling Velasquez to have his brother call UC-2.  UC-2 then received a call from Juan from another phone number, and Juan told UC-2 that they could meet in approximately 40 minutes.  UC-2 confirmed with Juan that UC-2 would be purchasing the previously-agreed amount of two ounces of fentanyl and two ounces of methamphetamine.  Those communications included texts from Juan stating "Hey friend I'm Kelvin cousin hey who works at 7 st and Minna."  (Minna Street is a side street located half a block off Mission Street.)  After 40 minutes, Juan called UC-2 and said he was waiting to meet at the liquor store at the northeast corner of Mission and 9th Streets.  Then, UC-2 walked to that liquor store and connected with a male who said he was "Juan."  Juan then walked up to, and sat in, the back of a dark green Toyota Camry.  From there, Juan produced four large bindles, two of suspected fentanyl and two of suspected methamphetamine.  Juan gave UC-2 the four bindles, and then produced another large bindle containing additional suspected fentanyl, and gave that to UC-2 saying it was "for his time," presumably because UC-2 was waiting for a while before finally purchasing the suspected narcotics.  UC-2 then confirmed with Juan that the price was $1,600, and provided Juan with that amount in eighty $20 bills.  UC-2 then asked Juan who he would be dealing with in the future, and Juan told UC-2 that UC-2 could contact either himself or Velasquez.

## III.   THE DEFENDANT'S PRIOR DRUG DEALING IN SAN FRANCISCO

Velasquez was a known drug dealer to SFPD because of five prior arrests for drug offenses.

### A.   On December 29, 2020, Velasquez Sold Drugs And Possessed Drugs For Sale

On December 29, 2020, SFPD officers conducted a controlled buy-bust of Velasquez in the Tenderloin District of San Francisco.  At 2 pm that day, a UC met with Velasquez on the south sidewalk of Eddy and Polk Streets, a block away from the U.S. Courthouse.  The UC bought one bindle (0.7

grams gross weight) of black-tar heroin from Velasquez for $15 and walked away.  Moments later, SFPD officers arrested Velasquez without incident.  A search incident to Velasquez's arrest located suspected methamphetamine (5.3 grams gross weight), suspected cocaine base (10.6 grams gross weight), and $162 in cash, plus the $15 from the controlled buy.  Velasquez faced state charges (SF Superior Court no. 20013781) for controlled substance sale and possession for sale charges.  On March 30, 2021, Velasquez was sentenced to court (informal) probation, likely on lesser, non-felony charges.

**B.      On January 22, 2021, Velasquez Sold Drugs And Possessed Drugs For Sale**

On January 21, 2021, SFPD officers conducted a second controlled buy-bust of Velasquez in the Tenderloin District.  At 1:34 pm that day, a UC met Velasquez, on Eddy Street east of Larkin Street, a block away from Velasquez's last arrest.  The UC asked, "crystal?" (the street term for methamphetamine).  Velasquez responded, "how much?"  The UC handed Velasquez one $20 bill. Velasquez pulled out one clear-plastic baggie and sprinkled multiple little "shards" of a crystal-like suspected methamphetamine (2 grams net weight), which he then handed to the UC.  The UC then walked away.

Moments later, SFPD officers arrested Velasquez without incident.  A search of Velasquez located a baggie of suspected cocaine base (8 grams gross weight), a baggie containing bindles of suspected heroin (16.2 grams gross weight), and a baggie of suspected methamphetamine (4.5 grams gross weight).  The $20 bill given for the sale to the UC was also located.  At that time, Velasquez had an active, 150-yard stay away order from the 600 block of Eddy Street per the state case (SF Superior Court no. 20013781) from his prior arrest.  He was cited, and no state court charges resulted.[4]

**C.      On February 18, 2021, Velasquez Sold Drugs And Possessed Drugs For Sale**

On February 18, 2021, SFPD officers conducted yet a third controlled buy-bust of Velasquez in the Tenderloin District of San Francisco.  At 5:05 pm that day, a UC drove eastbound on Eddy Street towards Larkin Street—the block over from Velasquez's last arrest.  The UC stopped his unmarked van and made eye contact with Velasquez, who was loitering on the south sidewalk of Eddy Street,

---

[4]     It appears there were no charges because, at the time, Velasquez was treated as a juvenile with his date of birth mistaken as April 28, 2003—i.e., he was 17 years-old.  Since then, reports show his date of birth as April 28, 2001.  So, he was an adult during all of his drug-related arrests.

1   mid-block between Polk and Larkin Streets.  Velasquez stated, "what you want," to which the UC

2   replied, "30 dollars of crystal."  Velasquez retrieved a large bag of suspected methamphetamine from

3   behind a vehicle parked on the south side of Eddy Street.  Velasquez ripped open the bag, approached

4   the passenger side of the UC's van, and handed the UC three shards of a crystalline, suspected

5   methamphetamine (2.2 grams gross weight) through the partially open window.  The UC reached over

6   and provided Velasquez with one $20 bill and one $10 bill, then drove away.

7        Moments later, SFPD officers arrested Velasquez without incident.  A search of Velasquez

8   located a baggie of suspected cocaine base (5.5 grams gross weight), a baggie of suspected

9   methamphetamine (3 grams gross weight), and $366 of cash including the $30 given by the UC.  At that

10  time, Velasquez still had an active, 150-yard stay away order from the 600 block of Eddy Street per the

11  state case (SF Superior Court no. 20013781) from his first arrest.  He was booked in county jail and

12  charged (SF Superior Court no. 21001867).  The resulting state case for sale and possession for sale of

13  controlled substances is still pending, with a next court date of November 17, 2022.

14      **D.**    **On August 3, 2021, Velasquez Sold Drugs And Possessed Drugs For Sale**

15       On August 3, 2021, SFPD officers conducted a fourth controlled buy-bust of Velasquez in the

16  Tenderloin District.  At 1:25 pm that day, a UC was walking east from Polk Street on the north side of

17  Eddy Street, the same block as last time.  The UC made eye contact with Velasquez, who walked

18  towards the UC.  The UC then asked, "let me get two dimes, I got 15."  Velasquez nodded yes and the

19  UC handed him one $10 bill and one $5 bill.  Velasquez and the UC walked together east on Eddy

20  Street, as Velasquez took out a small blue container with suspected rock cocaine base.  Velasquez

21  handed the UC two rocks of suspected cocaine base (1.7 grams gross weight) that were not wrapped.

22       Moments later, SFPD officers arrested Velasquez without incident.  A search of Velasquez

23  located the small blue container of suspected cocaine base (22.3 grams gross weight) and $120 of cash.

24  The $15 given by the UC was located later during the arrest process.  At that time, Velasquez still had

25  two active, 150-yard stay away order from the 600 block of Eddy Street per the state case (SF Superior

26  Court nos. 20013781 and 21001867) from his first arrest.  He was booked in county jail.  No state case

27  was filed for this incident due to the pendency of the state case from his arrest on February 18.

28

### E.   On April 20, 2022, Velasquez Sold Drugs And Possessed Drugs For Sale

On April 20, 2022, Velasquez was arrested at Mission and 7th Streets for possession for sale of fentanyl (29 grams gross weight) and cocaine base (15.4 grams gross weight)— this is the same location where he later sold fentanyl and methamphetamine resulting in the current charges.  At 3:05 pm that day, SFPD uniformed officers were driving a marked police vehicle, patrolling that mid-Market area of San Francisco due to the numerous complaints from businesses and citizens regarding narcotic dealing and narcotic use in that area.  They spotted Velasquez, a known drug dealer, riding a bicycle on the sidewalk, which was a municipal code violation.

Those SFPD officers detained Velasquez without incident, and saw a large clear-plastic sandwich bag with numerous loose pieces of suspected cocaine base (15.4 grams gross weight) in his front left jacket pocket in plain view.  A search of Velasquez's person revealed a clear-plastic sandwich bag with loose suspected fentanyl pieces (29 grams gross weight), a clear plastic bag of loose suspected Xanax bars (2.4 gram gross weight), and $299 in cash.  Velasquez was carrying a backpack, a search of which revealed numerous clear plastic sandwich bags, and a digital scale, both indicia of drug selling.  No paraphernalia for personal consumption of narcotics were found on him.

### IV.   THE DEFENDANT HAS BEEN UNDETERRED BY PRIOR ARRESTS, CHARGES, AND COURT STAY-AWAY ORDERS

Velasquez does not appear to have suffered a felony conviction, or been in custody for any significant period, for his prolific drug activity.  Having not faced any serious consequence, he has repeatedly sold a variety of controlled substances while state court charges have been pending, and in the face of orders to stay away from the blocks in the Tenderloin where he has been caught selling drugs repeatedly.  If anything, the only impact the stay away orders have had is that he moved his spot from Eddy Street to Mission and 7th Streets, to partake in open drug dealing there.

His latest state case, San Francisco Superior Court no. 21001867, has been diverted to a collaborative court with a case manager and a treatment plan, and remained there despite several subsequent arrests for drug sales.  He failed to appear for that court case, resulting in an arrest warrant that was pending upon his arrest for this case on October 18, 2022, and apparently processed into an appearance for his next court date in that case.

**IV.    THE DEFENDANT IS SUBJECT TO A REBUTTABLE PRESUMPTION AND THE
SECTION 3142(G) FACTORS WEIGH IN FAVOR OF DETENTION**

Velasquez is charged with three counts of violating 21 U.S.C. § 841(a)(1) and (b)(1)(C)
(possession with intent to distribute and distribution of fentanyl or methamphetamine) and one count of
21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C) (conspiracy to possess with intent to distribute and to
distribute fentanyl), each of which carry a maximum penalty of 20 years of imprisonment.  He also is
charged with one count of violating 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B)(viii) (conspiracy to
possess with intent to distribute and to distribute of 50 grams or more of a mixture or substance
containing methamphetamine), which carries a maximum penalty of 40 years of imprisonment.
Accordingly, he faces Controlled Substance Act charges with maximum penalties that are 10 or more
years.  A grand jury indictment, as Velasquez faces here, is sufficient to establish probable cause for the
purposes of invoking section 3142(e)'s rebuttable presumption.  *See, e.g., Ward*, 63 F. Supp. 2d at 1209.
Thus, Velasquez is subject to a rebuttable presumption in favor of detention; he bears the burden of
proving that he is neither a flight risk nor that his release will endanger the community.  *See* 18 U.S.C.
§ 3142(e)(3)(A).  He cannot meet this burden.  The information obtained from Pretrial Services provide
no basis to rebut the presumption as to either issue.  The only "mitigator" noted by Pretrial Services is
that he has no history of violence, which is irrelevant to his present risk of undeterred fentanyl dealing.

Under section 3142(g)(3) and (g)(4), Velasquez's history of repeated drug sales, including
fentanyl, reflect a danger posed to the community that favor detention.  Of note, Velasquez engaged in
these sales in defiance of court orders to stay away from the location where he engaged in those sales,
and failed to appear in court, showing an inability to abide by supervision conditions.  Moreover, he
orchestrated his last sale of fentanyl and methamphetamine remotely, while he was in Utah, per
historical location data obtained from his phone pursuant to a search warrant to his phone's service
provider.  Accordingly, even were he to ever put forth a stable residence, home detention will not stop
him from making similar drug sale arrangements remotely.   There is clear and convincing proof that no
conditions of release will stop this prolific dealer of all drugs, including fentanyl, from returning to the
drug trade if permitted.  He should be detained accordingly.

There is no rational reason to think that, given his history, Velasquez could be supervised

1  effectively by pretrial services and would appear for court in these federal proceedings.  As an initial

2  matter, he has a warrant for removal as noted by Pretrial Services.  He also has no ties to the

3  community—he professes to have moved to Utah in the last four months, but offers nothing to show a

4  stable residence or work there, and his assertion is belied by his conduct in San Francisco during that

5  time.  As significant, evidence of Velasquez's guilt and likely lengthy period of federal imprisonment—

6  he now faces a mandatory minimum with no prospect of diversion like his state court case—"makes it

7  more likely that he will flee. . . ."  *United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991)

8  (affirming district court finding government met burden of showing flight risk and danger to the

9  community in motion for pretrial detention pending re-trial where defendant faced lengthy period of

10  incarceration).  The preponderance of evidence shows he is a flight risk and should be detained for that

11  reason too.

12  **V.      CONCLUSION**

13         For the foregoing reasons, the Court should detain Velazquez pending trial.

14  DATED:  October 24, 2022                                        Respectfully submitted,

15                                                                          STEPHANIE M. HINDS
                                                                            United States Attorney
16

17                                                                          _____*/s/*_____
                                                                            DANIEL N. KASSABIAN
18                                                                          Assistant United States Attorney

19

20

21

22

23

24

25

26

27

28