JODI LINKER
Federal Public Defender
DANIEL P. BLANK
Senior Litigator
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:    (415) 436-7706
Email:         Daniel_Blank@fd.org

Counsel for Defendant VELASQUEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> KELVIN VELASQUEZ, <br><br> Defendant. | Case No.: CR 22–0363 MMC <br><br> **DEFENDANT'S SENTENCING MEMORANDUM** <br><br> Court:   Hon. Maxine M. Chesney <br> Date:    June 28, 2022 <br> Time:   2:15 p.m. |

## INTRODUCTION

Defendant Kelvin Velasquez has no prior convictions of any kind and did not directly participate in, or in any way benefit from, the final drug transaction charged against him, which increased his base offense level under the U.S. Sentencing Guidelines from 16 to 24, and his advisory guideline range from 8-14 months to 30-37 months. Taking into account the forthcoming amended U.S. Sentencing Guideline § 4C1.1, effective November 2023, providing for a further two offense-level reduction for defendants like Mr. Velasquez who have zero criminal history points, the equivalent guideline range here would actually be just 4-10 months. As Mr. Velasquez has already served over 8 months in custody on this case, it is respectfully submitted that the Court should sentence him to a term of imprisonment of "time served."

## BACKGROUND

Mr. Velasquez, age 22, was born and raised in a small town in Honduras in 2001. PSR ¶¶ 36-37. The town was surrounded by gang violence and did not have running water. *Id.* ¶ 37. He is the only child of his parents' union, but has several maternal and paternal half-siblings. *Id.* ¶ 36. Both of Mr. Velasquez's parents worked but they still suffered from financial hardship as most of his father's income went to his other children. *Id.* ¶ 37. As a child, Mr. Velasquez participated in soccer and art but he also suffered several traumatic events. *Id.* ¶ 38. At age 12, his parents separated, although his father continued to visit often. *Id.* At age 13, his eldest brother, with whom he was very close, drowned in a river. *Id.* And at age 15, his maternal grandmother, who helped raise him, passed away. *Id.* Mr. Velasquez left school after the 9th grade for employment purposes. *Id.* ¶ 46. Seeking to escape the violence in Honduras, and avoid the gangs there, he emigrated at age 19 to the United States on the "death train" where he witnessed assaults, burglaries and deaths. *Id.* ¶ 40.

Mr. Velasquez worked at a restaurant in Los Angeles and then moved to the Bay Area, where he worked at a bakery. *Id.* ¶ 47. Mr. Velasquez smoked marijuana daily and tried cocaine a couple of times. *Id.* ¶ 45. In the sixteen months between December 2020 and April 2022, Mr. Velasquez was arrested or detained multiple times on suspicion of selling drugs in San Francisco but he was never convicted or even formally charged. *Id.* ¶¶ 29-33. As a result, Mr. Velasquez has no prior juvenile adjudications or adult convictions, resulting in zero criminal history points. *Id.* ¶¶ 26-28.

In the instant case, Mr. Velasquez sold an undercover officer 2.9 grams of fentanyl for $50 on June 8, 2022. *Id.* ¶ 6. Then, on June 28, 2022, Mr. Velasquez sold another undercover officer 5.03 grams of fentanyl and 7.16 grams of methamphetamine for $200. *Id.* ¶ 7. On July 12, 2022, the second undercover officer telephoned Mr. Velasquez to negotiate the purchase of two ounces of fentanyl and two ounces of methamphetamine for $2000. *Id.* ¶ 8. The next day, when the undercover officer called Mr. Velasquez to schedule the purchase, Mr. Velasquez stated that he could not do the deal because he was not in San Francisco, but he explained that another person named "Juan" would meet the undercover officer and sell the drugs to him. *Id.* ¶ 9.

In fact, since the beginning of July, Mr. Velasquez had been living in Utah doing legitimate work for a fencing company. *Id.* ¶¶ 10, 47. From Utah, Mr. Velasquez did connect the undercover officer with "Juan" for the July 13 transaction, but he did not supply any of the drugs sold to the undercover officer and did not receive any proceeds from that sale. *Id.* ¶ 10.

Based upon these three transactions, a warrant issued for the arrest of Mr. Velasquez, and he was subsequently found in San Francisco and arrested pursuant to that warrant on October 19, 2022. *Id.* ¶ 4. Mr. Velasquez did not have any drugs on him when he was arrested on that date. *Id.* ¶ 10. Instead, Mr. Velasquez had voluntarily stopped selling drugs when he got the employment opportunity in Utah approximately four months before. *Id.* Mr. Velasquez had only returned to the Bay Area to retrieve his belongings and say goodbye to his friends before permanently relocating to Utah. *Id.*

Nevertheless, Mr. Velasquez was subsequently charged in a five-count indictment the drug transactions on June 8, June 20 and July 13 described above. *Id.* ¶ 1. Taking full responsibility for his conduct, Mr. Velasquez pleaded guilty to all charges in the indictment pursuant to a plea agreement with the government, even though he did not personally participate in, or in any way benefit from, the July 13 transaction. *See id.* ¶¶ 2-3. Taking into account the quantity of drugs from all three transactions, the plea agreement stipulates to a base offense level of 24. *Id.* ¶ 3.

After applying downward adjustments for Mr. Velasquez's acceptance of responsibility and the "safety valve," the U.S. Probation Officer calculated an advisory guideline range of 30-37 months, based upon Offense Level 19 and Criminal History Category I, and recommended a downward

variance under the factors of 18 U.S.C. § 3553(a) to a term of 24 months imprisonment due to such factors as his age and traumatic upbringing, balanced against the need to protect the community. *Id.* ¶¶ 15-24, 52, 74; *see also* PSR Sentencing Recommendation at 1-2.

**ARGUMENT**

Based upon a combination of factors under 18 U.S.C. § 3553(a) discussed below, including but not limited to those cited by the U.S. Probation Officer, it is respectfully submitted that the Court should impose a sentence of "time served," effectively eight months continuous custody since October 2022.

**I.   NO DIRECT PARTICIPATION IN OR BENEFIT FROM JULY 13 TRANSACTION**

Mr. Velasquez has pleaded guilty to, and accepts full responsibility for, all charged conduct in this case, including his role in the July 13 transaction (Counts Four and Five). PSR ¶¶ 1-2, 13. Nevertheless, under the factors of § 3553(a), the Court can and should take into account the undisputed fact that Mr. Velasquez did not personally participate in, or in any way benefit from, that transaction. *Id.* ¶ 9. On the contrary, by that time, Mr. Velasquez had moved to Utah for legitimate employment with a fencing company and had not sold drugs since the end of June 2022. *Id.* ¶ 10. Instead, for the July 13 transaction, Mr. Velasquez simply passed off the undercover officer to someone else after speaking to him on the phone the day before. *Id.* ¶ 9. When Mr. Velasquez was subsequently arrested pursuant to a warrant on October 19, 2022, he was not selling drugs, and did not even have any drugs on him, reflecting the fact that he had voluntarily stopped selling drugs approximately four months before. *Id.* ¶ 10. He was only temporarily back in the Bay Area to collect his belongings and say goodbye to his friends before permanently relocating to Utah. *Id.*

The quantity of drugs driving the guideline calculation in this case is based overwhelming on the July 13 transaction: 44.79 grams fentanyl and 56.14 grams of methamphetamine. *Id.* ¶ 9. By contrast, the combined quantity of the June 8 and June 28 transactions was just 7.93 grams of fentanyl and 7.16 grams of methamphetamine. *Id.* ¶¶ 6-7. But for the July 13 transaction, the base offense level in this case would be 16 instead of 24.[1] After applying the three-level downward

---

[1] 7.93 grams fentanyl times 2.5 kg conversion factor equals 19.825 kg converted drug weight, plus 7.16 grams methamphetamine times 2 kg conversion factor equals 14.32 kg converted drug weight,

adjustment for acceptance of responsibility and the two-level downward adjustment for safety valve, the advisory guideline range would have been just 8-14 months based upon Offense Level 11 and Criminal History Category I.

Mr. Velasquez does not dispute that he is legally responsible for the full quantity of drugs charged against him, including those from the July 13 transaction.  Nevertheless, the facts and circumstances of that transaction, including the limited role of Mr. Velasquez in it and his voluntary cessation of all drug dealing activity months prior to his arrest in this case, are legitimate considerations for the Court under the factors of § 3553(a).

**II.   TWO-LEVEL REDUCTION UNDER § 4C1.1 FOR ZERO CRIMINAL HISTORY**

Amendments to the U.S. Sentencing Guidelines effective November 2023 provide for a two-level downward adjustment in the offense level where the defendant has zero criminal history points.  *See* U.S.S.G. § 4C1.1 (eff. Nov. 1, 2023) (available at ussc.gov/guidelines/amendments).  Because in this case Mr. Velasquez has zero criminal history points, with no prior convictions of any kind, he would be eligible for this further downward adjustment.  Although the new § 4C1.1 is not in effect for another few months, the Court can take this circumstance into account now under the factors of 18 U.S.C. § 3553(a).

Applying the equivalent of the two-level downward adjustment under § 4C1.1 here, the advisory guideline range for the full quantity of drugs would be 24-30 months based upon Offense Level 17,  and discounting the July 13 quantities as above would be just 4-10 months based upon Offense Level 9.  As noted above, Mr. Revels has already served over 8 months in continuous custody since October 2022.  In combination with the factors cited by the U.S. Probation Officer of Mr. Velasquez's age and traumatic upbringing, it is respectfully submitted that a downward variance to a term of imprisonment of "time served" is warranted here.

/ / /

/ / /

/ / /

---

results in a total of 34.145 kg converted drug weight and a base offense level of 16.  *See* U.S.S.G. § 2D1.1(c)(12) (20 kg to 40 kg converted drug weight).

DEFENDANT'S SENTENCE MEMO
*VELASQUEZ*, CR 22–0363 MMC

4

**CONCLUSION**

For the foregoing reasons, the Court should sentence Mr. Velasquez to a term of imprisonment of "time served," effectively over eight months in custody.

Dated:   June 21, 2023                    Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

              /S
DANIEL P. BLANK
Senior Litigator